I have reserved two minutes for rebuttal. That gives you eight out of the gate, so the floor is yours. Good morning, your honors. May it please the court. This case concerns a defendant's right to conflict-free counsel. In this case, the defendant was a defendant in a bank fraud case. The victim was Chase Bank. The amount of money at issue had been estimated at $3.2 million stolen from Chase Bank. And two weeks before trial, his court-appointed lawyers, who were partners at a major firm in town, first disclosed to him and the court their conflict. Their conflict being that one of these partners currently represented Chase Bank. Right, but I mean, so I think that's all clear from the record, I guess. But there's no dispute that it is a waivable conflict, right? Your honor, I would suggest that this is a per se issue here. Very similar to the case in Schwarz, where we had a counsel who represented the Police Benevolent Association, was on a retainer with them, and obviously got a ton of business from them. Simultaneously, in the Schwarz case, represented one of the police officers. And he chose a path that did not involve pointing the finger at another police officer, potentially driven by his loyalty to the much more lucrative client, the institutional client, the PBA. In that case, this court held that that was non-waivable, that no rational defendant would waive that conflict. I would submit here, you have a client, a defendant, who is a defendant where his victim is Chase Bank, and now he learns two weeks before trial that his lawyer- I just thought that our case law was pretty clear, that there's really only a couple of situations that are unwaivable. One is where the attorney is not licensed, which is not relevant here. And the other is where the attorney is basically a co-conspirator. Right, but the government has conceded that the Schwarz case is a third example. In Schwarz, this court said no rational defendant would waive it. But leaving that aside, Your Honors, if it's waivable, the issue here is that the waiver was completely flawed. On multiple levels, it was flawed. First, the requirement under Curseo is to fully explain the dangers involved in proceeding with your current counsel. All we had throughout this Curseo waiver is whether your client will be able to cross-examine a Chase witness at trial. That was the focus of the waiver. And Judge Rakoff throughout kept saying, but they already have a waiver from Chase. You don't really need to worry. They're going to cross-examine. They promise you they're going to do it as aggressively as they can. But that wasn't the only issue here. The fact that Chase was a victim was never raised during the actual Curseo waiver. The judge briefly referred to it the next day when he went back to look to see was his Curseo waiver sufficient. But it was never actually presented to the client to understand what it means that your lawyer also simultaneously represents your victim. And I do want to say two things. There was a lot of discussion several times. Your lawyer's firm previously represented Chase. That is not what the Crow lawyers wrote in their letter. In their letter, they told the court, Kelly Curry, Chase is a personal client of Kelly Curry. So it is a current client. There's also been a lot of discussion about it representing Chase in unrelated matters. We don't know because no inquiry was made by the court of Kelly Curry about the matters that he represents Chase in. And it could be related if Mr. Curry was, for example, representing Chase in fraud compliance, defending shareholder suits because of their sloppy fraud compliance, or was representing them in some context of independent monitoring. I mean, there's all sorts of potential where there could be a relationship between Kelly Curry's current matters with Chase and his representation of the client in this particular case where the victim is Chase. No mention of the fact that there could be a conviction if they were going to go to trial or even a guilty plea, that there could be Chase witnesses at a FATICO hearing. Ultimately- Well, do you think it makes a difference whether there's a witness at a trial as opposed to at a FATICO hearing? No, I don't. The fact that the witness was clearly established, right? The fact that there's going to be a Chase witness subject to cross-examination. I agree. But the court kept saying in the particular cursio waiver here, which was done in the context of a guilty plea, was that we don't really need to worry about the witness issue because you're going to plea guilty anyway and the chances of a witness at sentencing would be negligible. I mean, this was how Judge Rakoff was presenting the cursio issue to the client. I'm not sure that's fair. It seemed that Judge Rakoff was contemplating that there'd need to be a waiver regardless of whether it was a guilty plea or a trial and that the conflict would entail at least one manifestation of it as witnesses being crossed at trial. It would manifest witnesses being crossed at trial. He did not discuss the issue of witnesses being crossed at a potential FATICO hearing that would be determining the level of loss you're going to face, which therefore determines the amount of time you face. So you think that the witness would perhaps have consented to the way of the conflict with respect to crossing the victim witness at trial but not at a FATICO? I think that the full extent of the dangers of the waiver needed to be advised to Mr. Wells. They were not advised to Mr. Wells. The only thing that was discussed is this one witness who's going to testify about some investigation they did potentially at the trial. That was the one discussion in the cursio waiver. So there was no discussion of the potential of the FATICO hearing. There was the other issue in cursio is that the defendant is supposed to be encouraged to seek independent counsel. It was offered by Judge Rakoff. Do you want to consult with independent counsel? Not, I encourage you to. I'm going to appoint somebody so that you can do it. The counsel at that time was what, the third or fourth counsel that Mr. Wells had? So Mr. Wells was, I think, you have to assume that he was aware of the fact that he could have another lawyer, don't you think? He'd gone through, he burned through three, right? Well, to be clear, he had federal defenders and then he hired counsel. He fired the counsel he hired. He fired the federal defender, then he fired the person that he'd hired, and then he had to burn. And then he got appointed counsel. Your Honor. And then on the eve of trial, he wanted another lawyer. He did want another one. He did, and it was denied to him. But you know, it's an interesting pattern that repeats in both state and federal court. I was a state trial judge once upon a time, and it's curious that it repeats that way. But anyway, go ahead. Your Honor, just in response to that, I do want to say two things could be true. That the defendant could be a difficult defendant who goes through multiple lawyers, and we've all had experience of that. We don't suspend the Sixth Amendment for difficult clients. Go ahead. And we could also have a situation of a deep and profound conflict, which both has a terrible appearance, an optics appearance here, but also, I believe, adversely impacted performance, which I do want to respect. With respect to the waiver itself, Your Honors, there was another issue with it where throughout, I would say, there was essentially the statement that if you don't waive, you're going to have to proceed pro se on your own. And I think that was very problematic. It was repeated multiple times to him. Actually, I'm sure I agreed with that. I mean, it seems to me that on the 18th of September, there's repeated references to if you either waive or I'll have to appoint you new counsel. It's not until the next day, where the conflict is really not the chase waiver, the next day, on the 19th, the dispute is over tactics, whether or not Mr. Wells agreed with how the lawyers from Crowell & Loring were going to conduct the cross. And then it is a fair game for the judge to say, well, you can either do this yourself or you can keep these folks. But that wasn't a waiver issue, right? Well, the waiver, the cursio waiver was being made primarily in the context of a plea. And so I would submit that that cursio waiver needed to be broader and reflect the fact that if you don't waive, you will get new counsel, and that means you're going to get new trial counsel. And that was never made clear to him. And the moment he wanted new trial counsel, it was denied to him. Well, if you are not waiving the conflict, then I can't take the plea unless we first get you new counsel. That's on the 18th. So if you're not willing to do it, that's fine. Those are your choices. But then I'll have to get you new counsel before we could take a plea. That's not saying you have to go pro se or you have to waive. And the next day when he asked for you. No, I'm talking on that day. On that day. Right. And so you keep conflating, I think, the two. After his waiver is when he then says, I still want to fire my lawyer because I don't like the trial tactics. And at that point, the judge says, well, then you've got a choice. And it's not about waiver. It's a choice about whether you want to stick with these lawyers or whether you want to go yourself because you ain't stopping. Correct, Your Honor. So you're saying that you're applying. No, you're actually saying that Judge Rakoff put undue pressure on Mr. Wells to waive the conflict because he was given the hobson's choice of either proceed pro se or waive. And I guess I don't see that in the record. Well, I think the problem with the waiver initially was that it was addressing solely the issue of the plea. Didn't give Mr. Wells sufficient time to really contemplate the gravity of the conflict. And then the next day he walked in and he said he was going to trial, but he wanted new counsel. And he did say, the only reason I was waiving was solely because I was trying to enter a guilty plea the day before. Now he's on his way to trial and he doesn't want these counsel and he says over and over, I don't trust you. I submit, Your Honors, in the totality of that situation, we have a deep problem here with counsel that were deeply conflicted and a lawyer and a defendant who did not fully appreciate the extent of the conflict and the ability that this gave him now to seek new counsel. I also have points about the way that I believe this adversely impacted the actual representation, which is a requirement here as well. Am I out of time? I believe I am. You are out of time. I am out of time. I'm going to save my rebuttal. Well, I wanted to ask you a question, though, about the second point that you got in your brief, and that's with respect to the conditions of supervised release. I wonder if you could just answer for me, why is an authorization to probation, to share documents with a treatment provider, a condition of supervised release? It seems to me that it imposes no obligations on Mr. Wells. There's not a basis for Mr. Wells to get tripped up by it or that he could be violated for it. This is just an authorization. It could have been made as part of a judgment. It could have been made later. And so it's not clear to me how this is what one would typically think of as a condition of supervised release. It's listed as a special condition by the court? Well, the condition is that he participate in cognitive behavioral therapy. And if he doesn't do that, then he would get violated, presumably. But the authorization is simply saying to probation, and by the way, you should give some documents, including the PSR, to the cognitive behavioral treatment therapist. And I'm not saying it's not relevant, and I'm not saying that it doesn't perhaps implicate the privacy interests of your client, but it's not clear to me how it is really a condition of supervised release, and that might affect how it is analyzed by the court. I guess, Your Honor, one could say because it's listed as a condition, that implicit in it is you're not going to oppose the release of that information to your provider, not that the client is given much opportunity to oppose the release of the document to the provider. Well, he's not being directed to hand over anything in his possession. This is really just for probation. I guess my second question is why is this ripe? I mean, Mr. Wells is serving an 11-year term. He won't even begin supervised release for many years. It's not clear whether there will be any other documents that exist. It's not clear whether the cognitive behavioral therapist will even want them. It seems to me this is all very speculative, and nothing would prevent Mr. Wells, at the time he commenced his supervised release and is about to go to a cognitive behavioral therapist, to say, by the way, I don't like you turning over this stuff. I object. Absolutely, Your Honor. He could at that point. It's not clear that he would have counsel in that context in doing it, and so at least in presenting it here at the appellate level, I'm able to have Your Honors view that particular issue. It is a very common one happening now in the Southern District of New York, not one that I've seen in any other district across the country, and because particularly of concerns about accuracy in presentence reports, I think this blanket authorization to probation officers to turn this over is something that this court should question. Thank you. We'll now hear from the Governor. Ms. Chang. Good morning, Your Honors. May it please the Court. Catherine Chang for the United States, and I represent the government both on this appeal and also in the district court proceedings below. I'd like to turn to the conflict issue, but just very briefly, with respect to the second issue raised by the appellant, the disclosure of the PSR. This same issue has been raised in another appeal that was United States v. Amy Harris, case number 24-1099, which was argued last Friday, and this morning the panel had affirmed the disclosure of the PSR to the mental health treatment provider, so I just wanted to make the panel aware of that. Turning to the conflict issue, the district court did not abuse its discretion in denying the eve of trial motion by the defendant's fourth set of attorneys to withdraw as counsel. There was no prejudice to the defendant, given that he decided to plead guilty before any chase witness testified, and because there was no FATICO hearing. On top of that, this was a waivable potential conflict that defense counsel's other client, Chase Bank, had already waived prior to trial, and Wells himself waived three times. So under this court's precedence in Leslie and Lucier, Wells' waiver was valid and there was no Sixth Amendment violation to his right to effective assistance of counsel. Well, just so I'm clear, are you suggesting that Chase's waiver solved this whole problem and Wells' waiver was irrelevant? No, I'm not suggesting that. I think under the court's precedent in Leslie, this court held that the fact that the other client had waived obviated the need for a cursio hearing, but here we have more than what the court affirmed in Leslie. We do have a waiver by the defendant three times through the course of— No, no, I understand the facts here, but I guess I'm trying to understand the argument, because I think what you just said is that based on Leslie, there was no need to do anything more after Chase executed the waiver. I think out of an abundance of caution, it was necessary to have the additional cursio discussion that was discussed here. I guess that's the issue. I mean, is it necessary or is it out of an abundance of caution? I think there's a little bit of unclarity in the precedence, but at a minimum, this was a waivable potential conflict, and the defendant waived, and on top of that, there was no prejudice. Keep going. Okay. I'd like to address some of the issues that I think appellant's counsel raised, in particular the analogy to the Schwartz case. The Schwartz case involved an extraordinary set of facts that was not intended to create a whole new line of law and are easily distinguishable from the facts here. In Schwartz, defense counsel started a new law firm to represent the PBA under a $10 million retainer, while at the same time representing a police officer whose defense implicated another police officer, as both police officers were part of the PBA. That's distinguishable from the situation here. Krull is not a fledgling firm. Its representation of Chase was unrelated to the case, and Chase we have the conflict. On top of that, with regard to prejudice, I just want to flag that it seems as though appellant's counsel is not contesting that no showing of prejudice can be made here because the appellant's counsel is only arguing about an adverse impact. But here, there was no prejudice because the defendant chose to plead guilty before any Chase witness took the stand. There's no evidence of a plea being tainted by any potential conflict, and the defendant hasn't asked to withdraw his plea. And just in general, the evidence at trial was overwhelming, and this Chase witness's testimony was going to be extremely limited. There was no prejudice at all with respect to sentencing in light of the fact that Wells had waived a Fatico hearing after his defense counsel had specifically argued for a Fatico hearing, and it was only when the district court had explained its sentencing approach that there was only a potential downside risk of additional losses at a Fatico that the defendant waived the Fatico hearing. And so ultimately, based on Krull's advocacy, the defendant had a very favorable outcome here. The loss amount that the government had initially asserted was over $3 million, and it ultimately got pushed to about half a million dollars, and the district court ultimately only imposed restitution of $164,000 with $3,500,000 going to Chase. And throughout, the district court had commented on defense counsel's vigorous advocacy on behalf of the defendant and the fact that they were loyal to the defendant all the way through. And this ultimate sentence as well that the district court imposed of 132 months for 11 years was below the government's request and below the probation sentence. And so for all these reasons, the district court's judgment should be affirmed, and if there are no further questions, the government rests on its brief. Well, I thought you would respond perhaps to some of the points that Ms. Murray made. So she suggested that Mr. Wells was not sufficiently apprised of the dangers of this conflict. If you're saying there's no prejudice and we don't even need to consider that, I guess I'd want to know that. Are you relying principally on the lack of prejudice and therefore saying he could have been oblivious and in the dark and it was a bad cursio, but it didn't matter? No, I would not say that. I think the argument's twofold. I would argue that the defendant did give a knowing waiver, and I'm happy to explain and address the issues that appellant's counsel raised, but also on top of that, there was no prejudice. With respect to the informed waiver, it's true that the cursio discussion occurred at the last minute in sort of a chaotic context the day before trial when the defendant suddenly decided to plead guilty, then failed to plead, then went to the trial the next day, then rehashed the discussions. In fairness, the suddenness was also due to the fact that counsel, on the eve of trial, noticed that Chase was one of its clients. I mean, was there some mystery that Chase was a victim in this case prior to that? No, Your Honor, but I think overall the record reflects that the defendant's waiver was knowing and voluntary, and he did it three times. There's no magic words or particular cursio script. Well, I don't think I agree with you that the waiver occurred exclusively on the last day just before I started trial and plead guilty, because the previous day, the court had gone through this extensively with the defendant and secured a waiver then, or the defendant gave a waiver then, so that when the court said to the defendant, you have to go with this counsel or go pro sec, that was after the defendant had already waived the conflict with the previous occasion. And then the counsel suggested, well, maybe he understood that conflict as only pertaining to a guilty trial. The court then went through it all over again, and again, resulting in a waiver. I couldn't hear all of that, but I think to the extent that the court is referring to the cursio discussion that happened the day before trial and any arguments about whether or not that was adequate, I think the record reflects that it was a knowing voluntary waiver, and I'm happy to go through. Specifically, at that point and through the discussion that day and also in the continuation of the discussion the following day, which was the morning of trial, the defendant had been informed through defense counsel's letter, but also through the district court, that defense counsel represented Chase in unrelated matters, that Chase was a victim, that Chase had waived this conflict, and that there was a risk of defense counsel crossing a Chase witness potentially less assiduously, but that that risk was diminished because Chase had waived, and there was a reference to a potential conflict at sentencing if the defendant still would proceed to attack Chase witnesses. The offer was made for a defendant to consult with independent counsel, which was rejected, and so under all these circumstances, the defendant was aware of the material aspects of the potential conflict and waived that conflict, and on top of that, just going to the point that I think was raised before about the discussion the following day after he had already waived, when there's discussion about whether or not the defendant would proceed pro se or continue with counsel, it had nothing to do with the conflict of interest, and was more about the fact that defendant was a difficult client and he wanted certain lines of questioning or certain defenses that were unsupported by the evidence and legally impermissible, and the district court was explaining that to him repeatedly, and you see that in the record. This is at Appendix 143, 145, 146, 148, 164 to 165, and that problem would still be there if new counsel were appointed, and the fact that this conflict that defendant had with his counsel was unrelated to this Chase issue is underscored by the fact that the moment the government agreed to limit its direct examination of the Chase witness so as not to elicit any identification or photograph or link to Wells, he immediately waived the conflict. He immediately waived the conflict? Yes, that's the context for what caused him to immediately waive the conflict. I had a theory that somehow Chase was colluding against him or something like that, and it's curious. The whole point was that he was very concerned about this photograph, which really doesn't have much of a connection. I suppose it had some proof of value to it, but obviously the government made a decision that it wasn't necessary. The minute the government says we're not going to offer that, boom, he turns around and he doesn't have any problem anymore. Yes, exactly. The odd thing about this, the way it plays out to some degree, is that defense counsel had to know for a long period of time that they were conflicted because Chase was identified early on as the victim, right? Yes. And the disclosure doesn't come until you're knocking on the door of the trial, right? Had the jury been picked by that time? You were getting ready to pick a jury? Yes. The discussion about the photograph and the extent of this was right before jurisdiction. But I mean the conflict. Counsel had to know he was conflicted from the day he picked up the file. The minute he sees that Chase is a victim, he knows he's conflicted. He or she, I apologize, I don't know. And so, you know, it's odd. This is after the fact. This is me always kind of figuring it out. But this could have all been avoided if this conflict had been confronted much earlier on. Instead, it occurs at the edge of the trial. The judge has got a – they're picking a jury. He's got a jury in the box, and all of a sudden the defendant wants a new lawyer and there's a conflict. So now they get through and do a concursion. I mean it just bollocks us all. In any event, once the photograph is out, boom. He waves and then he leaves, right? Yes. All right, thank you, Ms. Chang. We'll now hear from Ms. Murray for two minutes of rebuttal. Thank you, Your Honor. And the wonders of arguing the Second Circuit, you learn in real time that your last argument was decided. Your Honor, the cursio waiver has to be compliant with cursio whether the defendant is pleading, whether the defendant is going to trial. What happened here was a very cursory cursio waiver that was particularly superficial because of the idea that you're pleading guilty. So what is the prejudice from your perspective? What would have happened or could have happened? Right. And, Your Honor, let me clarify that the rule is not prejudice, just adversely affected, right? Right, that's what I'm trying to say. Sorry, I misspoke. Thank you. But because all I have to show is a plausible alternative strategy, it might have even been unreasonable and it might have been unwinnable, but it would be plausible. So let's go through the potential plausible strategies here. Had this been the robust cursio waiver that was necessary, the client was very eager to explore what he viewed as a collusive relationship between a predator police officer who appears to have sexually assaulted the cooperating witness and also Chase Bank employee. And the client was very eager to explore that, I think ultimately kind of muddy up Chase, muddy up the government in the course of the trial through that relationship. The Chase lawyers had no interest in presenting any of that and exploring it. The court had reserved judgment. Maybe because it might highlight the fact that he himself had developed a romantic relationship with this same person so that she might then be the person to accept the checks that he had forged for thousands of dollars. I mean, that's why Chase is the victim. So, I mean. It doesn't have to be winnable, Your Honor. It just has to be. The point is that one client's, with all due respect, lunacy doesn't decide the parameters of the conflict, does it? The trial strategy of using bad behavior by the government can always be useful. The potential conflict between counsel, the counsel face because Chase is a client, is understandable. The question is, what's the scope of it and what's the depth of it? And it doesn't have to show prejudice. But at the same time, it has to show whether that lawyer is going to make, that lawyer is going to be conflicted in the sense that they're going to make choices that are against his best interests. And one could argue that it wouldn't be in the interest of Chase's lawyers to be pounding a former Chase employee about a collusive relationship with a government officer and potentially raising issues about the rest of the Chase investigation in the case. There would also be the whole separate issue of challenging Chase's fraud prevention schemes, compliance schemes, the adequacy of them, the reliability of them. We have no idea what Mr. Curry was doing for Chase. Was he at all intimately involved in analyzing their compliance methods? But they were an investigator in the case. In order to carve out the predating police officer, the government was now going to call Chase witnesses and Chase investigators that they hadn't planned on calling before. So this, again, goes to the conflict issue. You seem to be setting the bar for the adverse effect pretty low. So if he would have worn a different tie that day, then that's enough? It has to be that these are lines of argument that might have done something, right?  Your Honor, I think this is not an implausible argument, that there is an opportunity to come in here and argue that, to the extent that government is relying on Chase's investigation, that there could be an attack on the credibility of that investigation, and this lawyer will be conflicted in doing that. We also have to explore the issue of the conflict in the sentencing. And there are a couple of things going on in the sentencing, and the government says, look how wonderful they were. They got it down from $3.2 million to half a million. But those lawyers were saying that it was below $250,000. And there was a discussion about having a FATICO, and ultimately there was no FATICO. Again, how can conflicted lawyers who represent Chase properly advise Mr. Wells about giving up his right to a FATICO when that FATICO is going to put Chase and its investigation and the quality of its investigation and the quality of its numbers on trial in a FATICO hearing? So this didn't happen. It's a plausible pathway, potentially unreasonable, potentially unwinnable, but a plausible pathway that was not followed. There's also the issue of acceptance of responsibility. Mr. Wells pled, and Judge Rakoff wanted a more robust expression of responsibility. It ultimately didn't happen. But again, that expression of responsibility would implicate the victim of the case. Keep in mind, Chase was the victim, the victim, $3.2 million worth of a victim in this case. There have been a couple of other banks, but the biggest victim was Chase. And so for these and other reasons in my brief, Your Honor, I believe there was an adverse impact on the representation and this case. Okay. Well, thank you both. We will reserve decision. Thank you, Your Honor.